**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 19-12269 (CSS) |
| | ) | |
| Debtors. | ) | **(**Jointly Administered**)** |
| | ) | |
| | ) | |
| PILOT THOMAS LOGISTICS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. _____ (CSS) |
| | ) | |
| MDC ENERGY LLC, | ) | |
| MDC TEXAS OPERATOR LLC, | ) | |
| MDC REEVES ENERGY LLC, and | ) | |
| NATIXIS, NEW YORK BRANCH. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT AND REQUEST FOR DECLARATORY
JUDGMENT TO DETERMINE VALIDITY, PRIORITY,
AND EXTENT OF MINERAL LIENS ON THE DEBTORS' PROPERTY**

Pilot Thomas Logistics LLC ("Pilot Thomas"), by and through the undersigned counsel, hereby files this *Complaint and Request for Declaratory Judgment to Determine Validity, Priority, and Extent of Mineral Liens on the Debtors' Property* pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Rules") and the *Fifth Interim Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

[D.I. 674] to determine the validity, priority, and extent of its statutory mineral liens under applicable state law on certain of the Debtors' properties, and respectfully shows as follows:

## Parties

1. Plaintiff Pilot Thomas is a Utah limited liability company with its principal place of business located in Fort Worth, Texas.

2. Defendant MDC Energy LLC ("MDC") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3. Defendant MDC Texas Operator LLC ("MDC Texas Operator") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4. Defendant MDC Reeves Energy LLC ("MDC Reeves") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5. Natixis, New York Branch ("Natixis") is the administrative agent on behalf of certain lenders and other parties (collectively, the "Lenders" and, together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant MDC.

## Jurisdiction and Venue

6. Defendants MDC, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are debtors in the above-captioned jointly administered chapter 11 cases

styled *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.) (the "Cases"),

pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.      This Court has jurisdiction over the Cases and this Complaint pursuant to 28

U.S.C. §§ 157(a) and 1334(a), and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant

declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R.

Bankr. P. 7001(2) and 7001(9).

8.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9.      Venue of the Cases and this adversary proceeding in this district is proper under

28 U.S.C. §§ 1408 and 1409.

10.     Pursuant to Rule 7008(a) and rule 7008-1 of the Local Rule of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

"Local Rules"), Pilot Thomas consents to the Court's entry of a final judgment or order with

respect to the adversary proceeding if it is determined that the Court, absent consent of the

parties, cannot enter final orders or judgments consistent with Article III of the United States

Constitution.

## Nature of Action

11.     This is an action pursuant to Rules 7001(2) and 7001(9) and the Declaratory

Judgment Act (28 U.S.C. § 2201).

12.     By this Complaint, Pilot Thomas seeks a judgment of this Court declaring the

validity and extent of certain statutory mineral liens held by Pilot Thomas against the Debtor

Defendants' property and determining the priority of such liens against the prepetition and

postpetition liens and security interests of the Prepetition Secured Parties.  Specifically, Pilot

Thomas seeks a determination that (i) Pilot Thomas holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtor Defendants' property, and (ii) such valid, fully-perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and postpetition lien claims of the Prepetition Secured Parties.

## Background

13.     On November 8, 2019 (the "Petition Date"), the Debtor Defendants initiated their Cases by filing their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See Schedules of Assets and Liabilities for MDC Reeves Energy LLC* [Case No. 19-12388, D.I. 6].

15.     On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* [D.I. 49] (the "Cash Collateral Motion") seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties. On November 19, 2019, the Court entered the first interim order [D.I. 112] (the "First Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for December 13, 2019. On December 17, 2019, the Court entered the second interim order [D.I. 297] (the "Second Interim Order") approving the Motion on an interim basis and setting a further hearing on the Motion for January

4

15, 2020, which hearing was subsequently adjourned to January 17, 2020. On January 17, 2020, the Court entered the third interim order [D.I. 506] (the "Third Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for February 4, 2020. On February 4, 2020, the Court entered the fourth interim order [D.I. 554] (the "Fourth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for February 24, 2020. On February 27, 2020, the Court entered the Fifth Interim Order (together with the First Interim Order, the Second Interim Order, and any further interim or final order on the Cash Collateral Motion, the "Cash Collateral Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for March 31, 2020.

16.     On September 17, 2018, prior to the Cases and as set forth in the Cash Collateral Motion, the Prepetition Secured Parties made certain loans and extensions of credit under the Credit Agreement to MDC. In connection with the Cash Collateral Motion, the Prepetition Secured Parties have asserted that, under the Credit Agreement and certain other documentation executed therewith (collectively, the "Credit Documents"), MDC and certain affiliated guarantors granted "senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on . . . any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, including Cash, securities, accounts and contract rights . . . ." Cash Collateral Order ¶ (D)(i). This assertion of a first priority security interest includes oil and gas leasehold interests, working interests, and associated property rights.

17.     According to the relevant land records of Reeves County, the security instruments for the Credit Documents were not filed against the Debtor Defendant's real property interests in

that county—and thus the security interests of the Prepetition Secured Parties were not perfected as to such collateral—until September 25, 2018.

18.     Pursuant to the Cash Collateral Order, the Debtors have admitted and stipulated to the Prepetition Secured Parties' claim and security interests. *See* Cash Collateral Order ¶ (C), (D), (E), (F).[2]

19.     Furthermore, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Cash Collateral Order ¶¶ 4(a) and 4(b). The postpetition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with postpetition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date.

20.     In light of the Cash Collateral Order and the broad assertions of first-position priority by the Prepetition Secured Parties as to their prepetition and postpetition liens, Pilot Thomas disputes the Prepetition Secured Parties' prepetition and postpetition security interests insofar as such security interests are asserted to be superior to the valid, fully-perfected, and enforceable statutory mineral liens of Pilot Thomas as further described herein.[3]

---

[2] Under paragraph 23 of the Cash Collateral Order, these admissions stipulations are generally binding on all other parties in interest subject to a challenge period as set forth therein. Paragraph 23 of the Cash Collateral Order expressly provides, however, that certain "Statutory Lienholders" such as Pilot Thomas are not subject to this challenge period in order to preserve or protect the priority of their respective statutory liens or security interests, and further that "[n]othing in [the Cash Collateral Order] shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." Nevertheless, Pilot Thomas asserts that there is a justiciable controversy as set forth in this Complaint as to the competing priority of its statutory mineral liens with the prepetition and postpetition liens of the Prepetition Secured Parties.

[3] Importantly, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the

21.    As detailed in its *Notices of Perfection of Mineral Lien by Pilot Thomas Logistics, LLC Pursuant to 11 U.S.C. § 546(b)(2)* [D.I. 174 & 189] (the "Mineral Lien Notices"), Pilot Thomas is a company which continuously provided fuel to the Debtor Defendants, MDC, MDC Texas Operator and MDC Reeves, commencing in 2016 and through 2019 for operations relating to various leases located in Reeves County, Texas (the "Leases").  Fuel was initially provided to the Debtor Defendants pursuant to a credit application dated September 14, 2016 between Cactus Fuel and MDC Texas Energy, LLC.  Pilot Thomas is the successor-in-interest to Cactus Fuel and continued to provide fuel to the Debtor Defendants pursuant to this credit application.  The total amount due and owing Pilot Thomas by the Debtor Defendants for unpaid fuel deliveries through the Petition Date is at least $4,440,141.64, exclusive of any accruing interest, costs, fees, and other charges, with additional amounts owed and accrued after the Petition Date.

22.    Under applicable state law (Texas Property Code § 56.001 et seq.), Pilot Thomas obtained and perfected the following prepetition statutory mineral liens (the "Mineral Liens") on the Leases set forth below to secure unpaid amounts for fuel provided to the Debtor Defendants:[4]

| LEASE[5] | AMOUNT | NOTES | INSTRUMENT |
|---|---|---|---|
| SECRETARIAT WW | $22,345.40 | Notice already provided to Debtor on 09/11/19 and lien recorded on 09/23/19. | #2019015543 |
| TOYAH B 22-21 #2H | $985,023.01 | Notice already provided to Debtor on 09/06/19 and lien recorded on 09/23/19. | #2019015540 |
| WAR ADMIRAL 24 #4H | $557,182.34 | Notice already provided to Debtor on 09/17/19 and lien recorded on 10/01/19. | #2019016096 |

same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code."  Cash Collateral Order ¶¶ 4(a) and 4(b).

[4] Additionally, on December 5, 2019 [Docket No. 289] Pilot Thomas filed its Notice of Perfection of Mineral Lien Pursuant to 11 U.S.C. § 546(b)(2).

[5] Based on its review of the records, Pilot Thomas understands that the Debtor Defendants operated certain of these leases as a pooled unit and therefore, for the reasons stated herein, the Mineral Liens extend to and encumber the entire pooled unit.

| | | | |
|---|---|---|---|
| IMPERIAL EAGLE 24 #6H | $721,155.50 | Notice already provided to Debtor on 09/17/19 and lien recorded on 10/01/19. | #2019016092 |
| AFFIRMED 6-7 | $507,865.00 | Notice already provided to Debtor on 09/25/19 and lien recorded on 10/07/19. | #2019016493 |
| WHIRLAWAY 24 #3H | $506,285.02 | Notice already provided to Debtor on 10/11/19 and lien recorded on 10/24/19. | #2019017600 |
| SIR BARTON | $1,082.50 | Notice already provided to Debtor on 10/11/19 and lien recorded on 10/24/19. | #2019017600 |
| COUNT FLEET 11 3H | $54,252.17 | Notice already provided to Debtor on 10/24/19 and lien recorded on 11/06/19. | #2019018148 |
| OMAHA 11-6 #6H | $205,720.44 | Notice already provided to Debtor on 10/31/19 and lien recorded on 11/12/19. | #2019018358 |
| PICKPOCKET | $99,096.21 | Notice already provided to Debtor on 11/21/19 and lien recorded on 12/4/19. | #2019019444 |
| YUCCA SWD | $57,292.12 | Notice already provided to Debtor on 12/19/19 and lien recorded on 01/02/20. | #2020000035 |
| ALY-SHEBA 18-1H/2H | $265,348.42 | Notice already provided to Debtor on 12/19/19 and lien recorded on 01/02/20. | #2020000035 |
| SPECIAL EFFORT | $4,495.30 | Notice already provided to Debtor on 12/19/19 and lien recorded on 01/02/20. | #2020000035 |
| CALIFORNIA CHROME | $160,943.98 | Notice already provided to Debtor on 12/20/19 and lien recorded on 01/02/20. | #2020000037 |
| COPPERHEAD | $50,960.05 | Notice already provided to Debtor on 01/07/20 and lien recorded on 01/21/20. | #2020000798 |
| RUNAWAY GHOST | $15,349.95 | Notice already provided to Debtor on 01/07/20 and lien recorded on 01/21/20. | #2020000798 |
| COOPERS DREAM | $5,256.65 | Notice already provided to Debtor on 01/07/20 and lien recorded on 01/21/20. | #2020000798 |
| ROCKET WRANGLER 11-1H | $20,448.89 | Notice already provided to Debtor on 01/07/20 and lien recorded on 01/17/20. | #2020000656 |
| GALLIANT FOX | $11,732.55 | Notice already provided to Debtor | #2020000796 |

| | | | |
|---|---|---|---|
| BATTERY | | on 01/08/20 and lien recorded on 01/21/20. | |
| CR 210 FRAC PIT | $6,748.35 | | |
| BLAZE 21-WW3 | $11,471.30 | | |
| OBM PLANT | $12,787.02 | | |
| FIELD OFFICE/LIGHT PLANTS | $3,776.25 | | |
| MDC FIELD OFFICE | $22,328.02 | | |
| Texas State Comptroller (December) | $73,452.80 | | |
| Texas State Comptroller (January) | $57,742.40 | | |
| TOTAL: | $4,440,141.64 | | |

Pilot Thomas's Mineral Liens attach to and encumber various property interests (collectively, the "Collateral Properties"):  (i) the subject well; (ii) the whole of such land or leasehold or lease for oil and gas purposes; (iii) the material, machinery and supplies furnished by the lien claimant; (iv) all other material, machinery and supplies used for mineral activities; (v) all personal property; (vi) all buildings; (vii) all appurtenances; (viii) all other oil, gas and water wells and pipelines and their right-of-way located on the subject leases; (ix) the oil and gas produced from the subject leases; and (x) the proceeds from the sale thereof and any other property provided for under Texas law.  *See* Tex. Prop. Code § 56.003; *Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.-Houston [1st Dist.] 1997, no writ).[6]

---

[6] The law of the state of Texas is applicable in this context as the Leases in question and the provision of fuel by Pilot Thomas relate to real property located in Texas.  *See, e.g., Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010) (analyzing Texas and Oklahoma law to determine the competing priority of security interests of real property located in Texas and Oklahoma); *compare In re SemCrude L.P.*, 864 F.3d 280 (3d Cir. 2017) (applying Delaware state UCC law to determine perfection issues relating to security interests in personal property).

23.     The Mineral Liens encumber the following interests in the Collateral Properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782 (Tex. App.-Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied); *McCarty v. Halliburton Company*, 725 S.W.2d 817 (Tex. App. -Eastland 1987, writ ref'd. n.r.e.).

24.     Once filed and perfected, the inception date of Pilot Thomas's Mineral Liens on the Collateral Properties relates back to the commencement of the furnishing of labor and/or materials on the subject Leases.  *See* Tex. Prop. Code 56.004-005; *Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135, 143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract."); *Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782, 784 (Tex. App.-Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied); *cf. Grasso Prod. v. BMO Fin. Inc. (In re Century Offshore Mgmt. Corp.)*, 83 F.3d 140, 141 (6th Cir. 1996) (determining that, under Louisiana lien law, priority dates back to the inception of work, not the date of the first unpaid service).  As stated by the United States

10

Bankruptcy Court for the Northern District of Texas, Texas law provides that "the inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas and Oklahoma law, [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease." *Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010). Pilot Thomas first provided fuel to the Debtor Defendants in connection with the applicable Leases pursuant to the 2016 credit application and continuously provided fuel with respect to such Leases. The Mineral Liens of Pilot Thomas therefore date back to the applicable dates of when Pilot Thomas first furnished fuel to the Debtor Defendants commencing in 2016. Further, Pilot Thomas continuously provided fuel to the applicable Leases up until non-payment and then Pilot Thomas properly and timely perfected its liens. The Prepetition Secured Parties did not obtain and perfect its lien until September 25, 2018.

25. Under applicable Texas law, where multiple leases are operated as a pooled unit, the mineral liens extend to and encumber the totality of the acreage of each lease included (in whole or in part) in the applicable pooled unit. *See* Tex. Prop. Code § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.-Eastland 1975, no writ); *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341 (Tex. Civ. App.-Eastland 1968, writ ref'd n.r.e.). Upon information and belief, certain of the Leases referenced herein were operated as a pooled unit and therefore the Mineral Liens of Pilot Thomas extend to and encumber the entire pooled unit

and relate back to the commencement of the furnishing of labor and/or materials for the pooled unit.

26.     Pursuant to the Mineral Lien Notices and in compliance with Bankruptcy Code section 546(b)(2), Pilot Thomas provided notice to preserve, perfect, maintain, and continue its rights as a perfected lienholder in certain property interests of the Debtor Defendants under Texas statutory mineral lien law, *i.e.* Texas Property Code Chapter 56, and Pilot Thomas's claimed Texas constitutional lien on such Property under Article 16, Section 37 of the Texas Constitution. The Mineral Lien Notices constituted the legal equivalent of having recorded a mineral lien in the public records for the county where the Collateral Properties are located and then having commenced a suit to foreclosure the lien in the proper court. Pilot Thomas is uncertain of whether the Debtor Defendants are currently operating their wells and maintaining Pilot Thomas's collateral.

27.     In addition to filing its Lien Notices in the pending bankruptcy proceeding, Pilot Thomas has properly filed Lien Affidavits and Claim Notices in each applicable county asserting its rights under the Texas Property Code and the Texas Constitution.

### Justiciable Controversy

28.     The Prepetition Secured Parties assert that they have valid, perfected, enforceable, first-priority liens and security interests upon all of the Debtor Defendants' assets, which include the Collateral Properties, dating from their September 2018 Credit Documents and the Cash Collateral Order.[7] Pilot Thomas disputes that the Prepetition Secured Parties have first priority liens upon the Collateral Properties, including the Debtor Defendants' interests in oil and gas leases and/or working interests, because Pilot Thomas's Mineral Liens relate back to the

---

[7] *See, e.g.,* Cash Collateral Order at footnote 4 ("The Prepetition Secured Parties assert that the oil and gas production proceeds are the Prepetition Secured Parties' Cash Collateral, the Statutory Lienholders dispute that contention, and all of the parties' rights are reserved.").

12

commencement of the furnishing of fuel in 2016 on the subject Leases and prior to the September 25, 2018 perfection of a security interest by the Debtor Defendants to the Prepetition Secured Parties. Accordingly, Pilot Thomas seeks a declaration from the Court that Pilot Thomas's Mineral Liens are valid, perfected, enforceable and senior to the prepetition and postpetition lien claims of the Prepetition Secured Parties. A declaratory judgment which declares the extent, validity, and priority of competing lien claims on the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will adjudicate disputed issues involved in this controversy between secured creditors in this bankruptcy case. Pilot Thomas seeks and is entitled to a declaratory judgment regarding the extent, validity, and priority of its Mineral Liens and the extent, validity and priority of the asserted prepetition and postpetition liens of the Prepetition Secured Parties.

## First Claim for Relief
### Declaratory Judgment

29.    Pilot Thomas incorporates by reference the allegations set forth above as if fully set forth herein.

30.    This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

31.    As set forth above, Pilot Thomas has validly and timely recorded Mineral Liens against the Collateral Properties of the Debtor Defendants. These Mineral Liens relate back to inception dates prior to the recording of the competing security interests of the Prepetition Secured Parties, and therefore Pilot Thomas holds a senior secured claim to the Prepetition Secured Parties.

32.    Accordingly, Pilot Thomas respectfully requests a judgment of this Court declaring (i) that Pilot Thomas is the holder of validly and timely recorded Mineral Liens against

13

the Collateral Properties, and (ii) that Pilot Thomas's validly and timely recorded Mineral Liens on the applicable Collateral Properties, with inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties, are senior secured claims to the prepetition and postpetition claims and interests of the Prepetition Secured Parties in the Collateral Properties.

## Requested Relief

WHEREFORE, Pilot Thomas respectfully requests an order of the Court declaring that it holds a validly perfected, first priority Mineral Lien on the Collateral Properties prior in time and superior in right to the prepetition and postpetition claims and interests of the Prepetition Secured Parties.

Dated:  March 30, 2020

ELLIOTT GREENLEAF, P.C.

/s/ Eric M. Sutty
Rafael X. Zahralddin-Aravena (No. 4166)
Eric M. Sutty (No. 4007)
1105 N. Market Street, Suite 1700
Wilmington, DE  19801
Telephone:  (302) 384-9400
Email: rxza@elliottgreenleaf.com
ems@elliottgreenleaf.com

and

Joshua N. Eppich, Esq. (admitted *pro hac vice*)
Bryan C. Assink, Esq. (admitted *pro hac vice*)
J. Robertson Clarke, Esq. (admitted *pro hac vice*)
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102
Telephone:  (817) 405-6900
Email: Joshua@bondsellis.com
Bryan.Assink@bondsellis.com
Robbie.Clarke@bondsellis.com

*Counsel to Plaintiff, Pilot Thomas Logistics, LLC*