**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE<br><br>MTE HOLDINGS LLC, *et al.*,[1]<br><br>      Debtors. | Chapter 11<br>Case No. 19-12269 (CSS)<br>(Jointly Administered) |
| GRAVITY OILFIELD SERVICES, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>MDC ENERGY LLC D/B/A<br>MDC TEXAS ENERGY LLC,<br>MDC TEXAS OPERATOR LLC,<br>MDC REEVES ENERGY LLC, and<br>NATIXIS, NEW YORK BRANCH,<br><br>      Defendants. | Adv. Proc. No. 20-50664 (CSS) |

**NATIXIS, NEW YORK BRANCH'S ANSWER TO ADVERSARY**
**COMPLAINT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT**

Defendant Natixis, New York Branch, in its capacity as the administrative agent

(the "Agent") on behalf of lenders under that certain Credit Agreement dated as of September 17,

2018, hereby files this Answer (this "Answer") to Plaintiff Gravity Oilfield Services LLC's

("Plaintiff") *Complaint and Request for Declaratory Judgment to Determine Validity, Priority,*

*and Extent of Statutory Mineral Liens on the Debtors' Property* [Adv. No. 20-50664, D.I. 1] (the

"Complaint"),    and    Counterclaim    for    declaratory    judgment    as    set    forth    below

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: MTE Holdings LLC (7894) ("MTE"); MTE Partners LLC (1158); Olam Energy Resources I LLC
(0770); MDC Energy LLC (9140) ("MDC"); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC
Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

(the "Counterclaim").[2] Except as admitted, explained, or otherwise answered herein, the Agent

denies each and every allegation set forth in the Complaint, and respectfully states as follows:

## **ANSWER**[3]

1.      The Agent lacks knowledge or information sufficient to form a belief as to the

accuracy of the allegations in paragraph 1 of the Complaint, and therefore denies those allegations.

2.      The Agent admits the allegations in paragraph 2 of the Complaint.

3.      The Agent admits the allegations in paragraph 3 of the Complaint.

4.      The Agent admits the allegations in paragraph 4 of the Complaint.

5.      The Agent admits the allegations in paragraph 5 of the Complaint.

6.      The Agent admits the allegations in paragraph 6 of the Complaint.

7.      The allegations in paragraph 7 of the Complaint purport to state legal conclusions

to which no response is required, but to the extent a response is required, the Agent admits those

allegations.

8.      The allegations in paragraph 8 of the Complaint purport to state legal conclusions

to which no response is required, but to the extent a response is required, the Agent admits those

allegations.

9.      The allegations in paragraph 9 of the Complaint purport to state legal conclusions

to which no response is required, but to the extent a response is required, the Agent admits those

allegations.

---

[2]  Capitalized terms used in the Answer but not otherwise defined herein shall have the meanings ascribed to them in the Complaint.

[3]  The Agent omits the headings in the Complaint and states that the headings do not require a response as they are not allegations. To the extent that any heading could be construed as an allegation, or otherwise contains factual and/or legal characterizations, the Agent denies all such allegations and/or characterizations.

10. The allegations in paragraph 10 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent admits those allegations.

11. The allegations in paragraph 11 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent admits those allegations.

12. The Agent admits that Plaintiff seeks a declaratory judgment, but denies that Plaintiff is entitled to the requested relief or any relief.

13. The Agent admits that Plaintiff seeks the relief requested in paragraph 13 of the Complaint, but denies that Plaintiff is entitled to the requested relief or any relief.

14. The Agent admits the allegations in paragraph 14 of the Complaint.

15. The Agent refers to the indicated documents (and related documents) for a full, complete, and accurate statement of their contents and meaning, and otherwise lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in paragraph 15 of the Complaint.

16. The Agent admits the allegations in paragraph 16 of the Complaint.

17. The Agent admits the allegations in paragraph 17 of the Complaint.

18. The Agent admits the allegations in paragraph 18 of the Complaint.

19. The Agent admits that it recorded certain documents, but denies that the Agent asserts priority over Plaintiff or Plaintiff's liens by or solely by recording the documents listed in paragraph 19 of the Complaint and therefore denies the remainder of the allegations in paragraph 19 of the Complaint.

20. The Agent admits that Plaintiff disputes the priority of the Agent's liens and otherwise denies that Plaintiff is entitled to relief and denies the remaining allegations in paragraph 20 of the Complaint.

21. The Agent admits that Plaintiff filed D.I. 834, but the Agent lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in paragraph 21 of the Complaint or D.I. 834, and therefore denies those allegations.

22. The Agent lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in paragraph 22 of the Complaint, and therefore denies those allegations.

23. The allegations in paragraph 23 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations.

24. The allegations in paragraph 24 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations.

25. The allegations in paragraph 25 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations.

26. The allegations in paragraph 26 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations and denies that Plaintiff has fully and accurately recited the entirety of the applicable language from the *Cornerstone* case, and to the extent the Plaintiff is attempting to allege a

particular legal outcome based on the quoted language, the Agent denies that the *Cornerstone* case or Texas law entitles Plaintiff to the relief requested in the Complaint or any relief.

27.    The Agent lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in paragraph 27 of the Complaint regarding Plaintiff's services and dates of those services, and therefore denies those allegations.  The remaining allegations in paragraph 27 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies the allegations in paragraph 27 of the Complaint.

28.    The Agent lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in paragraph 28 of the Complaint regarding Plaintiff's services and dates of those services, and therefore denies those allegations.  The remaining allegations in paragraph 28 purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies the allegations in paragraph 28 of the Complaint.

29.    The Agent lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in paragraph 29 of the Complaint regarding the unitization or pooling of any wells or leases, and therefore denies those allegations.  The remaining allegations in paragraph 29 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations.

30.    The Agent lacks knowledge or information sufficient to form a belief as to the accuracy of the allegations in paragraph 30 of the Complaint regarding the Debtor Defendants' operations of wells or maintenance of any parties' collateral, and therefore denies those allegations. The remaining allegations in paragraph 30 purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations.

31.     The allegations in paragraph 31 purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations.

32.     The Agent admits that it has first-priority liens on all relevant assets, admits Plaintiff disputes the Agent's position, denies that Plaintiff's liens are senior to the Agent's liens, denies that Plaintiff is entitled to the relief requested or any relief, and otherwise denies the remaining allegations in paragraph 32 of the Complaint.

33.     The Agent admits that Plaintiff seeks the relief requested in paragraph 33 of the Complaint, but denies that Plaintiff is entitled to the requested relief or any relief.

34.     The Agent incorporates its responses to paragraphs 1-33 as if fully restated herein.

35.     The Agent admits that Plaintiff seeks a declaratory judgment, but denies that Plaintiff is entitled to the requested relief or any relief.

36.     The Agent incorporates its responses to paragraphs 1-35 as if fully restated herein, denies that Plaintiff's liens are senior to the Agent's liens, denies that Plaintiff is entitled to the relief requested or any relief, and otherwise denies the remaining allegations in paragraph 36 of the Complaint.

37.     The Agent admits that Plaintiff seeks the requested relief, but denies that Plaintiff is entitled to the requested relief or any relief.

38.     The allegations in paragraph 38 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations.

39.     The allegations in paragraph 39 of the Complaint purport to state legal conclusions to which no response is required, but to the extent a response is required, the Agent denies those allegations.

40.     The Agent states that the Wherefore clause does not require a response, but to the extent a response is required, the Agent denies that Plaintiff is entitled to the requested relief or any relief.

## GENERAL DENIAL

To the extent the Agent has not admitted, explained, or otherwise answered any allegation within the Complaint, the Agent denies any and all such allegations.

## AFFIRMATIVE DEFENSES

Further answering Plaintiff's Complaint, the Agent asserts the following defenses without assuming any burden that it would not otherwise have, including without admitting or acknowledging that it bears the burden of proof as to any of the defenses denominated herein. The Agent reserves the right to amend its Answer with additional defenses as further information is obtained through discovery.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's lien claims, in whole or in part, have been satisfied by prior payment.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's lien claims are invalid because Plaintiff failed to provide proper notice as required of a mineral subcontractor under Chapter 56 of the Texas Property Code.

## RESERVATION OF RIGHTS

The Agent reserves the right to revise, supplement, or amend its Answer and affirmative defenses, including reserving all defenses permitted under the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure, the Bankruptcy Code, and/or at law or in equity,

that may now exist or may in the future be available based on discovery and/or further investigation in this case (and/or the consolidated adversary proceeding).

## COUNTERCLAIM

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Counterclaim under 28 U.S.C. §§ 157(a) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue of this Counterclaim is proper in this Court under 28 U.S.C. § 1409, in that this adversary proceeding arises under, arises in, or is related to a bankruptcy case pending in this District.

3.      Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, the Agent consents to entry of a final judgment or order with respect to this Counterclaim.

4.      Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

### Factual Background and General Allegations

**A.      The Defendant Parties**

5.      Natixis, New York Branch is the Agent on behalf of certain lenders in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018 (as amended, restated, supplemented or otherwise modified from time to time,

8

the "Credit Agreement"), and together with all other documentation executed in connection therewith, including without limitation, the Guaranty Agreement (as defined in the Credit Agreement), the Letter of Credit Agreements (as defined in the Credit Agreement), the Security Agreement (as defined in the Credit Agreement), all other Loan Documents (as defined in the Credit Agreement), and any Swap Agreements (as defined in the Credit Agreement), the "Credit Documents," and the Agent, the lenders, the issuing bank of letters of credit under the Credit Documents, and each of the other "Secured Parties," as defined in the Credit Agreement, collectively, the "Prepetition Secured Parties").

6.      Debtor Defendant MDC Energy LLC, d/b/a MDC Texas Energy LLC ("MDC"), is the borrower under the Credit Documents.

7.      Debtor Defendant MDC Reeves Energy LLC ("MDC Reeves") and debtor Ward I, LLC ("Ward I") are guarantors under the Credit Documents (MDC, MDC Reeves, and Ward I, collectively, the "Prepetition Loan Parties").

8.      MDC Reeves and MDC own certain mineral interests in Reeves and Glasscock Counties, Texas, and MDC Texas Operator LLC ("Texas Operator" and collectively with MDC and MDC Reeves, the "Debtor Defendants") operates producing wells in connection with those mineral interests.

**B.      The Bankruptcy Proceedings**

9.      On October 22, 2019, Debtor MTE Holdings LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. On October 23, 2019, Debtors Olam Energy Resources I LLC and MTE Partners LLC filed their chapter 11 petitions. On November 8, 2019 (the "Petition Date"), Debtors MDC, MDC Reeves, Texas Operator, and Ward I (collectively

9

with MTE Holdings LLC, Olam Energy Resources I LLC and MTE Partners LLC, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

10.     On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Use Cash Collateral (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* [D.I. 49] (the "Cash Collateral Motion").

11.     Prior to a final order, the Court entered six interim orders approving the Cash Collateral Motion on an interim basis, having entered the sixth such order on April 2, 2020 [D.I. 874] (the six interim orders, collectively, the "Interim Orders").

12.     On May 15, 2020, the Court entered the *Final Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [D.I. 1092] (as may be amended, modified, or supplemented, the "Final Cash Collateral Order"), approving the Cash Collateral Motion on a final basis.

13.     As of the date of this Counterclaim, the Debtors' use of cash collateral is governed by the Final Cash Collateral Order. Among other things, the Final Cash Collateral Order (and preceding Interim Orders) contained admissions and stipulations by the Debtors regarding the security interests and liens of the Prepetition Secured Parties, *see* Final Cash Collateral Order ¶¶ C, D, E, and granted adequate protection liens as an inducement to the Prepetition Secured Parties to permit the Prepetition Loan Parties' use of cash collateral. *Id.* ¶ 4.

10

14.     Pursuant to paragraph 23 of the Final Cash Collateral Order (and corollary provisions in the preceding Interim Orders), these admissions and stipulations are binding on all other parties in interest, subject to a prescribed challenge period, which is subject to an exception for Statutory Lienholders (as defined in the Final Cash Collateral Order). *See id.* ¶ 23.[4]

## C.    The MDC Credit Agreement

15.     Prior to the Petition Date, the Prepetition Secured Parties made certain loans and extensions of credit to MDC. There remains an outstanding amount of at least $56,965,371.26, plus any accrued interest, fees, letters of credit, and other amounts that may be due and payable thereunder (collectively, the "Prepetition Secured Indebtedness").[5] The Prepetition Secured Indebtedness includes any and all principal and interest amounts owing or outstanding under the Credit Agreement, fees and other costs, expenses, and charges owing in respect of such amounts, and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit, swap obligations, banking services, or other obligations outstanding thereunder.

16.     The Prepetition Loan Parties granted senior security interests in, and continuing, valid, binding, enforceable, and perfected first priority liens on, all assets of the Prepetition Loan Parties to and/or for the benefit of the Prepetition Secured Parties (the "Prepetition Liens") pursuant to the Security Agreement, the Mortgages (as defined in the Credit Agreement), the Guaranty Agreement, and all other Security Instruments (as defined in the Credit Agreement).

17.     The Credit Documents are valid and binding agreements and obligations of the Prepetition Loan Parties.

---

[4] Paragraph 23 further provides that the Final Cash Collateral Order does not "modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." *Id.*

[5] On April 12, 2020, the Agent timely filed master proofs of claim on behalf of the Prepetition Secured Parties against MDC, MDC Reeves, and Ward I each in the amount of not less than $56,965,371.26. *See* Claim Nos. 472, 473, 474.

18.    The Prepetition Liens constitute valid, binding, enforceable, and perfected first priority security interests and Liens (as that term is defined in the Credit Documents ("Liens")), which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in the Credit Documents or the Final Cash Collateral Order.

19.    The collateral under the Credit Documents (the "Prepetition Collateral") includes any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, including cash, securities, accounts and contract rights, of the Prepetition Loan Parties, in or upon which a Lien, Mortgage, deed of trust, or other security interest has been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the applicable Credit Documents that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits.

**D.    Prepetition Secured Parties' Perfection of Security Interests**

20.    The Agent properly perfected the security interests granted under the Credit Documents and the Liens in and on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets, and/or by filing UCC-1 financing statements, mortgages, or other required documents against the Prepetition Loan Parties and such Prepetition Collateral in the proper state or county offices for the perfection of such security interests and Liens.

21.    On September 17, 2018, the Agent caused UCC financing statements (the "UCC Financing Statements") covering "all assets" of MDC, MDC Reeves, and Ward I (as the borrower and guarantors under the Credit Agreement, respectively) to be filed in accordance with applicable law with the Secretary of State of the State of Delaware, thereby perfecting the Prepetition Secured Parties' security interests and Liens on all assets of each such Debtor, then-owned or thereafter-

acquired, that may be perfected by filing a UCC Financing Statement, as of no later than September 17, 2018.

22.     On September 24, 2018, the Agent caused copies of the relevant deeds of trust (the "Deeds of Trust") and fixture filing financing statements (the "Fixture Filings") to be filed in accordance with applicable law in the county records for Glasscock County, Texas, thereby perfecting the Prepetition Secured Parties' security interests and Liens in the Collateral (as defined in each of the Deeds of Trust), then-owned or thereafter-acquired, and located in Glasscock County, as of no later than September 24, 2018.

23.     On September 25, 2018, the Agent caused copies of the relevant Deeds of Trust and Fixture Filings to be filed in accordance with applicable law in the county records for Reeves County, Texas, thereby perfecting the Prepetition Secured Parties' security interests and Liens in the Collateral (as defined in each of the Deeds of Trust), then-owned or thereafter-acquired, and located in Reeves County, as of no later than September 25, 2018.

24.     On April 16, 2019, the Agent caused copies of supplements to the Deeds of Trust to be filed in accordance with applicable law in the county records for Reeves County, Texas.

**E.     The Lien Priority Adversary Proceedings**

25.     Plaintiff is one of the Debtors' many trade creditors that allegedly performed labor in furtherance of, provided services, or furnished or hauled material, machinery, or supplies used in the Debtors' mineral activities. These trade creditors assert they hold statutory liens attaching to the Debtors' mineral leases, wells, and other property pursuant to Chapters 56 and/or 53 of Title 5 of the Texas Property Code. To date, these trade creditors have filed over 1,400 mineral liens ("Mineral Liens") and mechanics and materialmen's liens ("M&M Liens") against property of the Debtors' estates.

26.     On April 30, 2020, the Debtors filed the *Debtors' Motion for Entry of an Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants* [D.I. 1029], seeking implementation of certain procedures to resolve and reconcile these myriad lien claims.

27.     On June 2, 2020, the Court entered the *Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants* [D.I. 1150] (the "Lien Procedures Order"), approving procedures that, *inter alia*, required any statutory lien claimant that asserted its Mineral Liens or M&M Liens had priority over the Prepetition Liens in the same collateral to file an adversary proceeding to adjudicate the priority, validity, extent, perfection, and value of its purported liens within thirty days of entry of the Lien Procedures Order. *See* Lien Procedures Order § II.A.

28.     On June 8, 2020, in accordance with section I.B of the Lien Procedures Order, the Agent filed the *Administrative Agent's Statement Regarding Lien Perfection and Priority Dates* [D.I. 1174] (the "Statement of Perfection"). File-stamped copies of the Deeds of Trust, supplements thereto, Fixture Filings, and UCC Financing Statements were attached to the Statement of Perfection. *See id.*, Ex. 1–13.

29.     Pursuant to the Lien Procedures Order, each complaint instituting an adversary proceeding was required to:

> allege, to the extent such information is available to the Statutory Lien Claimant, sufficient factual and legal bases for priority, validity, extent, perfection, and value of the subject lien(s) as required under the applicable Bankruptcy Rules, and shall allege (1) sufficient information to identify the well(s), unit(s), lease(s), and other property (the "Specified Property") with respect to which the Statutory Lien Claimant asserts a priority lien, including all applicable Collateral Silos, (2) the date as to each Specified Property on which the Statutory Lien Claimant asserts it first provided goods or services to the Debtors, (3) the date as to each Specified Property to which the Statutory Lien Claimant asserts each statutory lien claim relates back, as that term is understood under applicable law, and (4) the factual bases for the

14

dates asserted under Section II.A.(2) and II.A.(3), including the factual bases for any assertion that the delivery of goods or providing service was continuous, as that term is understood under applicable law.

Lien Procedures Order § II.A.

30.    On July 2, 2020, Plaintiff filed its Complaint commencing this adversary proceeding [Adv. D.I. 1].

**F.    Plaintiff's Statutory Liens Are Either Junior to the Prepetition Liens or Invalid**

31.    On March 27, 2020, Plaintiff filed its *Notice of Perfection, Continuation or Maintenance of Lien Pursuant to 11 U.S.C. § 546(b)* [D.I. 834], claiming to perfect, maintain, and continue its rights in certain property of the Debtor Defendants under Texas state law (such purported collateral property, to the extent permitted under Texas Property Code § 56.001, *et seq.*, the "Claimed Collateral") and section 546(b) of the Bankruptcy Code.

32.    On March 26, 2020, Plaintiff filed proofs of claim against each of the Debtor Defendants [Nos. 300, 301, 302], asserting, *inter alia*, a secured statutory mineral lien claim in the amount of $2,407,670.48.

33.    Texas Property Code § 56.002 provides that "[a] mineral contractor or subcontractor has a lien to secure payment for services related to the mineral activities." Tex. Prop. Code § 56.002. Section 56.003 sets forth the property that is "subject to the lien." *Id.* § 56.003. Section 56.004(a) provides that "[t]he lien does not affect an encumbrance that attached to land before the lien's inception." *Id.* § 56.004(a). Section 56.005(b), in turn, provides that:

> The indebtedness for material or services accrues on the date the material or services were last furnished. All material or services that a person furnishes for the same land, leasehold interest, oil or gas pipeline, or oil or gas pipeline right-of-way are considered to be furnished under a single contract unless more than six months elapse between the dates the material or services are furnished.

*Id.* § 56.005(b).

15

34.     In order to validly secure a lien, the person claiming the lien must file an affidavit with the county clerk of the county in which the property is located "[n]ot later than six months after the day the indebtedness accrues." *Id.* § 56.021(a). Additionally, a mineral subcontractor claiming the lien must serve on the property owner written notice that the lien is claimed "[n]ot later than the 10th day before the day the affidavit is filed." *Id.* § 56.021(b).

35.     In order to be valid, a lien claimant's affidavit must include:

(1) the name of the mineral property owner involved, if known; (2) the name and mailing address of the claimant; (3) the dates of performance or furnishing; (4) a description of the land, leasehold interest, pipeline, or pipeline right-of-way involved; and (5) an itemized list of amounts claimed.

*Id.* § 56.022(a).

36.     A mineral subcontractor's affidavit must additionally include:

(1) the name of the person for whom labor was performed or material was furnished or hauled; and (2) a statement that the subcontractor timely served written notice that the lien is claimed on the property owner or the owner's agent, representative, or receiver.

*Id.* § 56.022(b). Further, a mineral subcontractor's notice to the property owner must include "the amount of the lien, the name of the person indebted to the subcontractor, and a description of the land, leasehold interest, pipeline, or pipeline right-of-way involved." *Id.* § 56.023.

37.     Plaintiff's purported Mineral Liens on the Claimed Collateral are junior to the Prepetition Liens because they relate back to a date that is after the filing date of one of the Prepetition Secured Parties' validly filed mortgages on the same property or are invalid due to one or more defects in their perfection under Texas Property Code Chapter 56, and therefore any such Mineral Liens are primed by or junior to the Prepetition Liens on the same collateral.

**Justiciable Controversy**

38.    All previous paragraphs of the Counterclaim are incorporated herein by reference.

39.    The Prepetition Liens of the Prepetition Secured Parties are valid, binding, enforceable, and perfected first priority security interests and Liens on all of the Debtor Defendants' assets, including the Claimed Collateral.

40.    Plaintiff disputes the first priority status of the Prepetition Liens on the Claimed Collateral.

41.    A declaratory judgment which declares the priority, validity, and extent of the Plaintiff's purported Mineral Lien claims in the Claimed Collateral is authorized under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Bankruptcy Rules 7001(2) and 7001(9) and will resolve disputed issues involved in this controversy. The Agent, on behalf of the Prepetition Secured Parties, respectfully seeks a declaratory judgment that the Prepetition Liens are valid, binding, enforceable, and entitled to priority over Plaintiff's purported Mineral Liens on the Claimed Collateral.

**First Counterclaim**

**Declaratory Judgment**

42.    All previous paragraphs of the Counterclaim are incorporated herein by reference.

43.    This Counterclaim arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Bankruptcy Rules 7001(2) and 7001(9).

44.    As set forth above, the Prepetition Secured Parties hold valid, binding, enforceable, and perfected first priority security interests and Liens on all of the Debtor Defendants' assets, including the Claimed Collateral.

17

45.     Plaintiff's purported Mineral Liens on the Claimed Collateral have inception dates after the Prepetition Secured Parties' corresponding perfection date, and therefore are junior to the Prepetition Liens on the same collateral.

46.     Plaintiff's purported Mineral Liens on the Claimed Collateral are invalid or unenforceable because they were not properly perfected under applicable Texas law, and therefore are junior to the Prepetition Liens on the same collateral.

47.     Accordingly, the Agent respectfully requests a judgment of this Court declaring that the Prepetition Liens are valid, binding, enforceable, and entitled to priority over Plaintiff's purported Mineral Liens on the Claimed Collateral.

## PRAYER

WHEREFORE, the Agent respectfully requests this Court:

a.  Deny Plaintiff's claim for relief set forth in the Complaint;

b.  Dismiss Plaintiff's Complaint, with prejudice;

c.  Enter a declaratory judgment in favor of the Agent on all issues, including by declaring that: (i) the Prepetition Liens are valid, binding, and enforceable; and (ii) Plaintiff's purported Mineral Liens on the Claimed Collateral are either junior in priority to the Prepetition Liens or invalid or unenforceable;

d.  Enter judgment in the Agent's favor on the Agent's Counterclaim; and

e.  Award the Agent any other relief that the Court deems just and proper.

Dated:   August 30, 2020
         Wilmington, Delaware              **BAYARD, P.A.**
                                           */s/ Erin R. Fay*
                                           Erin R. Fay (No. 5268)
                                           Daniel N. Brogan (No. 5723)
                                           600 N. King Street, Suite 400
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 655-5000
                                           Facsimile: (302) 658-6395
                                           efay@bayardlaw.com
                                           dbrogan@bayardlaw.com

18

- and -

**BRACEWELL LLP**
William A. (Trey) Wood III (admitted *pro hac vice*)
711 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone: (713) 221-1166
Facsimile: (713) 221-1212
trey.wood@bracewell.com

David J. Ball (admitted *pro hac vice*)
Logan S. Kotler (admitted *pro hac vice*)
1251 Avenue of the Americas, 49th Floor
New York, NY 10020
Telephone: (212) 508-6100
Facsimile: (212) 508-6101
david.ball@bracewell.com
logan.kotler@bracewell.com

Mark E. Dendinger (admitted *pro hac vice*)
CityPlace I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 947-9000
Facsimile: (860) 404-3970
mark.dendinger@bracewell.com

*Counsel to Defendant Natixis, New York Branch as*
*Administrative Agent and Lender*